## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **COBBLESTONE CONDOMINIUM ASSOCIATION, INC.,** | } } } | |
| **Plaintiff** | } } | |
| **v.** | } } | **Case No.: 5:16-cv-00573-MHH** |
| **TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,** | } } } } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This diversity action involves an insurance coverage dispute. Plaintiff Cobblestone Condominium Association bought an insurance policy from defendant Travelers Casualty Insurance Company of America that provided damage coverage for its condominiums. Cobblestone filed two claims under the policy, the first relating to building damage from a fire and the second to roof damage from a storm. The parties agree that both claims are covered under the insurance policy. Cobblestone invoked the policy's appraisal provision after the parties could not agree on a damage amount for the two claims, but the appraisal

process went awry, and Cobblestone filed this lawsuit alleging breach of contract and bad faith.[1]

Cobblestone seeks partial summary judgment on its breach of contract claims, asking the Court to find as a matter of law that Travelers was required to participate in the appraisal process on the fire and roof claims under the terms of the insurance policy but failed to do so. (Doc. 51). Travelers asks the Court to enter judgment in its favor with respect to Cobblestone's breach of contract and bad faith claims. (Doc. 48). For the reasons described below, the Court grants Cobblestone's motion as to the fire claim only, and it denies Travelers's motion except as to Cobblestone's claim of bad faith regarding the roof.

## I.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

---

[1] Pursuant to Federal Rule of Civil Procedure 41(a)(2), Cobblestone filed a motion to voluntarily dismiss without prejudice additional claims for specific performance and fraud. (Doc. 61). Travelers filed a response to Cobblestone's motion, requesting that the Court dismiss Cobblestone's claims with prejudice. (Doc. 62). By separate order, the Court dismissed Cobblestone's specific performance and fraud claims with prejudice. (*See* Docket Entry 65).

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations of the evidence; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Still, conclusory statements in a declaration cannot by themselves create a genuine issue of material fact. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Cross motions for summary judgment do not alter the Rule 56 standard. *See United States v. Oakley*, 744 F.2d 1553, 1555-56 (11th Cir. 1984) ("Cross motions for summary judgment will not, in themselves, warrant the court in granting

summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."). "In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Georgia State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)) (internal quotation marks and brackets omitted). "If both parties proceed on the same legal theory and rely on the same material facts ... the case is ripe for summary judgment." *NAACP*, 775 F.3d at 1345 (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)) (internal quotation marks omitted) (alteration supplied by *NAACP*).

## II.    SUMMARY JUDGMENT EVIDENCE

Cobblestone is an association of condominium homeowners in Huntsville, Alabama. (Doc. 45-1, pp. 2-3; Doc. 45-3, p. 5, tr. p. 14). Cobblestone's property consists of 26 residential two-story buildings, each with four downstairs and four upstairs units. (Doc. 46-10, p. 4; Doc. 46-11, pp. 25-27). Travelers issued a condominium-homeowners insurance policy to Cobblestone. (Doc. 55, p. 4). The policy covered all of the condominium units in the Cobblestone complex during the coverage period. (*See* Doc. 45-1). It is undisputed that Cobblestone paid its

premiums for the relevant coverage year and that the insurance policy was in full force and effect when the two incidents in question took place. (Doc. 37, pp. 1, 2, ¶¶ 1, 5; Doc. 55, p. 4).

In 2015, Cobblestone made two separate claims under the insurance policy regarding physical damage to its condominiums. The first claim stemmed from a fire, and the second claim concerned roof damage resulting from hail and wind in a storm. (Docs. 46-10, 46-11). The parties do not dispute that the policy provides coverage for the two losses. (Doc. 55, p. 4).

Cobblestone's insurance policy contains an appraisal provision. (Doc. 55, p. 4; Doc. 45-1, p. 64). In the insurance context, appraisal is a dispute resolution technique wherein a representative for each party works with an umpire to resolve disputes concerning the amount of an insured's loss. (Doc. 45-1, p. 64). The appraisal provision of the insurance policy states:

**E. PROPERTY LOSS CONDITIONS:**
 . . .
**4. Legal Action Against Us**

If we and you disagree on the value of the property, the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A

decision agreed to by any of the two will be binding.  Each party will:

    a.   Pay its chosen appraiser;

    b.   Bear the other expenses of the appraisal and    umpire equally.

(Doc. 45-1, p. 64).  Travelers initially agreed to submit Cobblestone's fire claim to appraisal, but Travelers later withdrew from the appraisal process.  (Doc. 55, p. 5).  With respect to Cobblestone's roof claim, Travelers rejected Cobblestone's demand for appraisal as premature.  (Doc. 55, p. 5).

## A. The Fire Claim

On February 17, 2015, a fire occurred in Building T of the Cobblestone complex.  (Doc. 46-10; Doc. 45-3, p. 11, tr. p. 37; Doc. 45-4, p. 50).  The fire destroyed four units and seriously damaged four additional units within Building T.  (Doc. 46-10).[2]  On March 26, 2015, Travelers estimated that the "replacement cost value" to restore Building T to its pre-loss condition would be $826,047.78.  (Doc. 45-15, p. 2).  After deducting amounts for depreciation, Travelers paid Cobblestone an "actual cash value" on the fire claim of $649,424.73.  (Doc. 55, p. 4).[3]  Travelers indicated that the amount withheld for depreciation would be

---

[2] Building T has since been demolished.  (*See* Doc. 51, p. 4).

[3] "Replacement cost value" refers to the amount one would expect to pay to replace or rebuild a similar property at today's cost, without deducting for depreciation.  *See* www.aldoi.gov/Consumers/Basic Coverages.aspx (Alabama Department of Insurance website).  "Actual cash value" reflects an amount equal to the replacement cost minus depreciation.  (*Id.*).  Cobblestone does not seem to challenge Travelers's application of actual cash value as opposed to replacement cost value under the policy, but Cobblestone contends generally that Travelers

payable upon completion of repairs up to the actual amount spent for the repairs. (Doc. 45-15, p. 2). During its investigation of the fire loss, Travelers obtained a "Marshall & Swift" report, dated March 16, 2015, which estimated a total "ground up" reconstruction cost for Building T at $1,167,060. (*See* Doc. 45-4, p. 35, tr. pp. 134-35).[4]

On April 1, 2015, Cobblestone retained The Howarth Group to represent it with respect to the fire claim. (Doc. 45-20, p. 2). One week later, The Howarth Group demanded appraisal of the fire loss under the insurance policy. (Doc. 45-21, p. 2). Without providing details to Travelers, The Howarth Group stated that Cobblestone had "several differences with the settlement offer provided by [Travelers]." (Doc. 45-21, p. 2). Chuck Howarth of The Howarth Group later testified that Travelers's estimate omitted numerous basic items such as plumbing supply lines, paint, primer, framing, electrical wiring, outlets, switches, and panel boxes, among other items necessary to restore Building T to its pre-loss condition and to bring the building into compliance with city building codes:

> It was obvious that the . . . estimate on which [Travelers relied] left a lot of damage out. There's holes in the estimate that are surprising. There are things – there are parts of the building he just left out. And this is the kind of stuff that a first-year adjustor would not leave out. This was a surprise to me. And those errors were duplicated room

---

did not cover the full amount of its losses under the policy.

[4] Marshall & Swift is a recognized service that insurers frequently consult when estimating construction costs. (Doc. 45-4, p. 35, tr. p. 134).

after room after room. . . . [W]e agreed on the general work. Just put the stuff you left out in the estimate.

(Doc. 50-17, p. 17, tr. p. 63; *see* pp. 17-25, tr. pp. 63-103).

On April 16, 2015, Travelers rejected Cobblestone's demand for appraisal as premature. (Doc. 45-22, pp. 2-3). Travelers explained that Cobblestone had not "presented its formal claim for damages," leaving it "unable to identify any differences that may exist with our offer and Cobblestone's claim." (Doc. 45-22, p. 2). On June 9, 2015, The Howarth Group provided Travelers with a proof of loss and estimate on the fire claim, which reflected a replacement cost value of $1,129,388.57 and an actual cash value of $993,861.94. (Doc. 45-23, pp. 2-172). Arthur Grandinetti prepared the estimate on behalf of The Howarth Group. (Doc. 45-23, p. 2). One week later, Travelers rejected Mr. Grandinetti's estimate: "we must reject the proof of loss since we are not in agreement on the amount of the damages." (Doc. 45-24, p. 2). Travelers cited the estimate's omission of an actual cash value and requested additional information. (Doc. 45-24, p. 2). Cobblestone denied Travelers's request and insisted on proceeding with appraisal. (Doc. 45-25, p. 2). On July 6, 2015, Travelers responded to Cobblestone's request to continue with appraisal: "we are in agreement to proceed with the appraisal process at this time. We have retained Harrison Jones . . . as our appraiser." (Doc. 45-26, p. 2). On July 17, 2015, Travelers and Cobblestone formally submitted the fire claim to

appraisal. (Doc. 50-2, p. 2). The parties mutually agreed to the appointment of Dale Mullin as the umpire. (Doc. 50-3, p. 2).

While the parties engaged in appraisal conversations, Cobblestone hired an architectural and engineering firm, Bird and Kamback, LLC, to create plans to rebuild Building T and to secure bids for the construction. (Doc. 45-27, pp. 37-40). Cobblestone asserts that it retained Bird and Kamback in an effort to comply with multiple citations from the City of Huntsville requiring that Cobblestone either tear down the damaged building or produce blue prints with plans for rebuilding. Cobblestone also wanted to "have an available contractor ready to begin construction once the umpire awarded damages [through appraisal]." (Doc. 26, p. 4; *see* Doc. 26-7, p. 4, ¶¶ 11-12). Travelers does not dispute that Cobblestone was permitted to seek out contractors and to secure bids in anticipation of construction. (Doc. 50-13, p. 10, tr. p. 36).

On October 6, 2015, Mr. Grandinetti and Mr. Jones, as appraisers for Cobblestone and Travelers, respectively, met with the umpire at the Cobblestone property to conduct a walk-through. (Doc. 45-33, p. 19, tr. p. 69). Mr. Jones testified that several weeks before the onsite meeting, he learned that Cobblestone was soliciting bids on the project through an architect and engineering firm. (Doc. 45-33, p. 19, tr. pp. 70-71). After the topic of the bids surfaced, the parties

discontinued the meeting pending submission and production of the bids. (Doc. 45-33, pp. 20, 23, tr. pp. 75-76, 87-88; Doc. 45-11, p. 17, tr. pp. 62-63).

On October 9, 2015, Bird and Kamback received sealed bids from local contractors. (Doc. 46-27, p. 2, ¶ 4; Doc. 46-28, p. 1, ¶ 1; Doc. 46-29, p. 3, ¶ 6; Doc. 47-1, p. 2, ¶ 4). On October 12, 2015, Travelers requested copies of the bids. (Docs. 45-35, 46-3). Chris Scaife, president of Cobblestone's homeowners association, declined to produce the bids and instead instructed Bird and Kamback to return the bids unopened to the bidders. (Doc. 46-2, p. 2). Mr. Scaife testified that Cobblestone did not open the bids and that Cobblestone returned the sealed bids to the bidders. (Doc. 45-12, p. 38, tr. pp. 146-48). Mr. Scaife explained in an email to Bird and Kamback:

> We had assumed the Referee in the independent appraisal would have had his final meeting with both sides before the bids were due. The meeting did not take place until afterwards as it was rescheduled a couple / few times. Your specs were based on insurance information to ensure we did not overspec the project and obtain offers that were over and above our final settlement amount. We need to settle with the insurer before we determine the price payable to the contractors. We don't want the referee to request the bid packages and award us a dollar amount based on the lowest compliant offer.
>
> Please advise the offerors that we are awaiting settlement with the insurance company and don't want to hold onto offers that have expired. We also don't want them to believe that we opened their offers and are trying to conduct an auction. Returning their packages to them unopened will give them the surety that we have not favored one over the other.

(Doc. 46-2, p. 2).

On October 29, 2015, Travelers wrote to Cobblestone, stating:

> Until we receive the [bid] documents and have an opportunity to review them were are not in position to go further with the appraisal on the building.

(Doc. 46-3, p. 2). On November 11, 2015, Travelers followed up on its requests for the bids and informed Cobblestone that it was "suspending the appraisal process pending receipt and an opportunity to review the previously requested documents that we have not yet received." (Doc. 46-4, p. 2). Cobblestone's fire claim has lay dormant since Travelers withdrew its participation from the appraisal process.

## B. The Roof Claim

In June of 2015, a thunderstorm with high winds and hail damaged roofs in the Cobblestone complex. (Doc. 46-11, pp. 25-30). Cobblestone filed a claim under its insurance policy with Travelers. (Doc. 45-11). The parties dispute the number of roofs impacted—Cobblestone contends that the roofs of all 26 buildings in the complex were damaged while Travelers maintains that the roofs of only eight buildings suffered damage. (Doc. 51, p. 3, n. 2). On June 24, 2015, Travelers inspected approximately half of the roofs in the complex. (Doc. 50-8, p. 7, tr. p. 20). Twenty-two of the roofs were replaced in 2009 pursuant to a separate storm damage claim, (Doc. 46-12, pp. 5-6; *see* Docs. 46-13, Doc. 46-14), and, according to Travelers's adjuster, the newer roofs did not need to be replaced,

(Doc. 50-8, p. 20, tr. pp. 20-21). Following Travelers's inspection, the company agreed to repair damaged shingles on eight roofs in the complex using a hand-seal or gluing process. (Doc. 45-12, p. 11, tr. p. 38; Doc. 46-16, pp. 1-13). Travelers initially paid Cobblestone $17,238.55 on the roof claim, which included a $1,000 deductible. (Doc. 46-16, p. 9, Doc. 45-12, p. 11, tr. pp. 37-38).

After receiving Travelers's estimate, Cobblestone retained Superior Roofing to provide an estimate. (Doc. 45-12, pp. 12-13, tr. pp. 43-45). Superior Roofing examined the damaged roofs on August 5, 2019 and determined that the roofs could not be repaired using the hand-seal or gluing method proposed by Travelers. (Doc. 45-12, p. 11, tr. p. 38). Superior Roofing estimated that it would cost $121,280.00 to repair the roofs. (Doc. 46-18, p. 2; Doc. 45-12, p. 5).

On August 25, 2015, Cobblestone demanded appraisal on the roof claim. (Doc. 46-19, p. 2). Travelers did not submit to appraisal but instead agreed to pay the Superior Roofing estimate at a replacement cost value of $114,466.88. (Doc. 46-20, p. 11; Doc. 45-12, p. 15, tr. p. 54). After depreciation, Travelers paid Cobblestone $57,798.50 on the roof claim. (Doc. 45-12, p. 15, tr. p. 54; Doc. 45-13, p. 16). On September 17, 2015, Cobblestone demanded appraisal on the roof claim for a second time and advised that The Howard Group would serve as its appraiser. (Doc. 46-22, pp. 2-3). Travelers responded on December 2, 2015, rejecting Cobblestone's demand for appraisal as premature. (Doc. 46-23, pp. 2-3).

Travelers explained that Cobblestone had not "presented its formal claim for damages as a result of wind damage," leaving it "unable to identify any differences that may exist with our offer and Cobblestone's claim." (Doc. 46-23, p. 2). The Howarth Group retained an expert, Dr. Neil B. Hall, Ph. D., to assess the roof damage. (Doc. 46-25, p. 8, tr. p. 27). Based on a report prepared by Dr. Hall, The Howarth Group estimated a replacement cost value of $596,507.38 to repair the roofs. (Doc. 46-24, pp. 2-33). On March 1, 2016, Travelers rejected Cobblestone's demand for appraisal on the roof claim and sought to re-inspect the roofs. (Doc. 45-26, pp. 2-3). Cobblestone filed this action On March 7, 2016. (Doc. 1-1).

### C. <u>Policy Provisions</u>

In addition to the appraisal provision, noted at page 7 above, the following policy provisions are at issue in this case:

**E. PROPERTY LOSS CONDITIONS:**
. . .
**3. Duties in the Event of Loss or Damage**

    a.    You must see that the following are done in the event of loss or damage to Covered Property:

    . . .

    (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records

    . . .

    (9) Cooperate with us in the investigation and settlement of the claim.

**F. COMMERCIAL PROPERTY CONDITIONS**

    **1. Concealment, Misrepresentation or Fraud**

        a.   This Coverage Form

        b.   The Covered Property

        c.   Your Interest in the Covered Property

        d.   A claim under this Coverage Form

. . .

    **4. Legal Action Against Us**

    No one may bring a legal action against us under this Coverage Form unless:

        a.   There has been full compliance with all of the terms of this Coverage Form; and

        b.   The action is brought within 2 years after the date on which the direct physical loss or damage occurred

(Doc. 45-1, pp. 64-65, 70).

**I.   DISCUSSION**

Alabama law governs Cobblestone's state law claims in this action. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (a federal district court sitting in diversity must apply "state substantive law and federal procedural law[]"); *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992) ("A federal court in a diversity case is required to apply the laws . . . of the state in which the federal court sits.").

**A. <u>Breach of Contract Claim</u>**

Under Alabama law, "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Courts must "enforce the insurance policy as written if the terms are

unambiguous." *Safeway*, 912 So. 2d at 1143. When a party contends that a term in a policy is ambiguous, a court must ask "what a reasonably prudent person applying for insurance would have understood the term to mean." *Safeway*, 912 So. 2d at 1144 (internal quotations omitted). "This means that the terms of an insurance policy should be given a rational and practical construction." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 799 (Ala. 2002). Insurance policies "shall be construed liberally in favor of the insured and strictly against the insurer." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379-380 (Ala. 1996). Any "doubt or uncertainty" as to the meaning of a contract term must be interpreted against the insurer that drafted the policy. *Upton v. Miss. Valley Title Ins. Co.*, 469 So. 2d 548, 555 (Ala. 1985) (internal quotation omitted).

To establish a breach of contract claim under Alabama law, Cobblestone must show "(1) the existence of a valid contract binding the parties in the action, (2) [it's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Southern Med. Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (citing M*cGinney v. Jackson,* 575 So. 2d 1070, 1071-72 (Ala. 1991)). "A nonperformance must be 'material,' which means that the nonperformance undermined the parties' objectives in making the contract." *Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 1321 (N.D. Ala. 2018) (citing *Sokol v. Bruno's, Inc.*, 527 So. 2d 1245, 1247-48 (1988)). The law implies a duty of good

faith and fair dealing in every contract. *Shoney's LLC v. MAC East, LLC*, 27 So. 3d 1216, 1220, n. 5 (Ala. 2009). This "implied covenant" requires that "neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Shoney's*, 27 So. 2d at 1220, n. 5 (quoting *Sellers v. Head*, 73 So. 2d 747, 751 (1954)).

### 1. The Fire Claim

With respect to the fire claim, Travelers challenges Cobblestone's breach of contract claim on four grounds. First, Travelers argues that Cobblestone did not perform under the policy because Cobblestone did not produce the bids Cobblestone obtained for the restoration and/or rebuilding of Building T. Second, Travelers argues that the policy is void because Cobblestone intentionally concealed the bids. Third, Travelers argues that Cobblestone did not perform under the policy because Cobblestone did not identify an impartial appraiser as required by the appraisal provision in the contract. Fourth, Travelers argues that appraisal was not appropriate under Alabama law because questions of coverage and causation exist. Cobblestone argues that it properly performed and fulfilled its obligations under the policy, that its failure to produce the bids did not amount to a material breach of the contract, that its appraiser is impartial, and that coverage and causation are not in dispute because Travelers admits that fire is a covered loss under the policy.

a. Cobblestone's Post-Loss Obligations

In support of the contention that Cobblestone's failure to produce the bids excused Travelers from the appraisal process, Travelers cites Alabama state court cases and several district court cases applying Alabama law that stand for the general proposition that an insured has duties under an insurance policy and the insured must comply with those duties before the insurer must provide coverage for a loss.[5] For example, courts have recognized that an insurer may request an examination under oath or an itemized list of damages as a condition precedent to coverage. *See, e.g., Nilsen*, 745 So. 2d at 267-68 (failure of insured to submit to examination under oath); *Cope*, 630 So. 2d at 411-12 (failure of insured to provide written proof of loss); *Akpan*, 961 So. 2d at 872 (failure of insured to submit to examination under oath); *Hillery*, 705 F. Supp. 2d at 1364 (failure of insured to provide itemization of losses); *Morton*, 102 F. Supp. 3d at 1261-62 (failure of insured to submit as many as ten categories of claims information and failure to submit to examination under oath); *Pittman*, 868 F. Supp. 2d at 1348-49 (failure to produce banking and credit card information related to allegedly stolen artwork and jewelry).

---

[5] *See, e.g.*, *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033 (Ala. 2014); *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264 (Ala. 1998); *United Ins. Co. of America v. Cope*, 630 So. 2d 407 (Ala. 1993); *Akpan v. Farmers Ins. Exch., Inc.*, 961 So. 2d 865 (Ala. Civ. App. 2007); *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343 (S.D. Ala. 2010); *Morton v. Automobile Ins. Co. of Harford, Conn.*, 102 F. Supp. 3d 1248 (N.D. Ala. 2015); *Pittman v. State Farm Fire and Cas. Co.*, 868 F. Supp. 2d 1335 (M.D. Ala. 2012), *aff'd* 519 Fed. Appx. 656 (11th Cir. May 20, 2013).

The cases that Travelers cites do not address the question presented here, namely whether an insured has a continuing obligation to provide information to an insurer after the insurer has fully investigated a claim, determined that coverage exists, reached its valuation of the damage, and agreed to submit the claim to appraisal. Only one of the cases that Travelers cites, *Baldwin*, concerns an appraisal provision. In *Baldwin*, more than 100 insureds demanded appraisal under an insurance policy, even though most of the insureds had not provided notice of their claims or basic information concerning their losses to the insurer. Based on these facts, the Alabama Supreme Court determined that appraisal was not appropriate because the insureds had not sufficiently complied with their post-loss obligations to trigger coverage. Without additional information about the insureds' claimed losses, the insurer could not determine whether a dispute existed as to the amount of the losses. The Alabama Supreme Court noted:

> [O]f the approximately 130 insureds, only 14 have provided even some of the documentation BMIC requested in its investigation of the claimed losses. Even the 14 insureds who have provided some documentation, however, have failed to submit to an examination under oath as BMIC has requested. … Although perhaps helpful, the submitted information does not provide BMIC with all the information to which it is entitled under the terms of the insureds' policies, and the insureds responses fall far short of completion of the duties required to trigger BMIC's duty to make an offer to settle the insured's claim for a particular amount in addition to the amount to which the insured apparently had previously agreed. We do not see how the parties can engage one another in a dispute over the amount of loss involved, and go even further to invoke an administrative process for resolving that dispute, unless and until (1) the insureds

have provided the required notice of loss, including the basis for each insured's claimed loss and its value, and (2) the insureds have permitted BMIC to investigate and verify the claimed losses, as allowed under the terms of the respective policies.

*Baldwin*, 181 So. 3d at 1044.

Unlike the insureds in *Baldwin*, Cobblestone provided Travelers information about the fire claim that allowed Travelers to determine whether coverage existed. Travelers prepared an estimate and agreed that a dispute existed between the parties sufficient to warrant submission of the claim to appraisal. Travelers cannot complain now that Cobblestone breached its obligation to provide information to trigger an appraisal. The parties entered a sworn agreement to submit the claim to appraisal. Because the parties reached the point of submitting Cobblestone's claim to appraisal, Travelers necessarily agreed that Cobblestone had performed under the policy.

Thus, Cobblestone's failure to produce the sealed bids after Travelers agreed to submit the claim to appraisal does not amount to a material breach of Cobblestone's obligations to supply loss information to trigger an appraisal.

b. Intentional Concealment

Cobblestone's policy states that coverage is void "in any case of fraud" or if an insured "intentionally conceal[s] or misrepresent[s] a material fact concerning . . . [t]he Covered Property [or]. . . a claim under this Coverage Form." (Doc. 45-1, p. 69). Alabama Code § 27-14-28 states that "[n]o misrepresentation in any proof

of loss under any insurance policy shall defeat or void the policy unless such representation is made with actual intent to deceive as to a matter material to the insured's rights under the policy." Alabama Code § 27-14-28 (1975). The Alabama Supreme Court has held that all insurance contracts must be construed to include this statutory expression of public policy. *Ex parte State Farm and Cas. Co.*, 525 So. 2d 119, 120-21 (Ala. 1988).

Courts have applied fraud and misrepresentation exclusions in cases involving fraudulent proofs of loss, such as where an insured claims as a loss an item that the insured never possessed or a loss that the insured caused by, for example, arson or another criminal act. *See. e.g., Auto Club Family Ins. Co. v. Mullins*, No. 5:11-cv-1452, 2012 WL 6043652, *7-8 (N.D. Ala. Nov. 29, 2012) (jury question concerning insured's misrepresentation with intent to deceive where evidence showed that insured homeowner caused the fire loss); *Anthony v. Allstate Insurance Co.*, No. 06-RRA-2122-M, 2008 WL 11380100, *5 (N.D. Ala Sept. 19, 2008) ("[M]isrepresentations concerning the value of the contents of the home are material to the contents claim.").

Travelers argues that the bids Cobblestone obtained are material and that Cobblestone's concealment of the bids voids the policy. But Cobblestone obtained the bids several months after the parties already had agreed to submit the fire claim to appraisal. By the time Cobblestone had obtained the bids, Travelers had

investigated the fire loss, prepared its own estimate, and determined that a dispute existed with Cobblestone as to the amount of the loss. The policy did not forbid Cobblestone from hiring an architect or seeking bids in preparation for construction while Cobblestone's coverage claim was in the appraisal process. There is no evidence that Cobblestone waited to obtain the bids in an effort to deprive Travelers of information concerning the claim. Rather, Cobblestone sought the bids after the City of Huntsville cited Cobblestone and demanded that Cobblestone either tear down the damaged building or produce blueprints and plans for rebuilding the structure. Mr. Scaife testified that he instructed the architect to limit the plans to the amount of Travelers's initial estimate with the understanding that the scope of work could expand if Cobblestone was successful in the appraisal process. Mr. Scaife explained that he did not want to produce the bids to Travelers because the bids necessarily were limited by Travelers's initial estimate. The Court also notes that Mr. Jones was aware of the bids prior to the October 6 meeting with Cobblestone's appraiser and the mutually selected umpire at the site.

Travelers's interest in seeing the bids is understandable, but Cobblestone had no obligation under the policy to disclose the bids. Cobblestone's refusal to share the bids therefore does not amount to concealment. *See Turner v. Liberty National Fire Ins. Co.*, 681 So. 2d 589, 591-92 (Ala. Civ. App. 1996) (finding intentional

concealment where insured concealed or misrepresented relevant facts regarding fire loss such as the date of the fire, ownership of other home (which potentially would affect coverage), and the cash value of the insured structure and its contents).

### c. Impartiality of Cobblestone's Appraiser

Travelers argues that Cobblestone failed to appoint an impartial appraiser as required by the appraisal provision under the insurance policy, and that this excused Travelers's performance under the contract. The fee agreement between Cobblestone and The Howarth Group provided for an hourly rate with a cap and a contingency that The Howarth Group would not recover a fee unless the appraisal yielded an award in excess of Travelers's initial estimate. Travelers has not identified Alabama case law providing that such an arrangement automatically renders an appraiser impartial. The Court has not identified guidance from Alabama courts as to whether the contingency in the fee agreement here is acceptable. Therefore, the Court finds that Travelers has not demonstrated that Cobblestone failed to select an impartial appraiser.[6] Viewing the facts in a light most favorable to Cobblestone, Travelers has not produced evidence that its

---

[6] The Court notes that even if Travelers had demonstrated that The Howarth Group was not impartial, concerns regarding Cobblestone's selected appraiser could have been raised with a court of competent jurisdiction per the appraisal provision in Travelers's policy. *See, e.g., Verneus v. Axis Surplus Ins. Co.*, 2018 WL 4150933, * 4 (S.D. Fla. August 29, 2018) (granting insurer's motion to strike insured's appraiser on grounds that appraiser was not impartial and providing plaintiff with an opportunity to designate another appraiser).

performance under the contract was excused based on Cobblestone's choice of appraiser.

### d. Appropriateness of Appraisal

Relying on hindsight, Travelers argues, alternatively, that appraisal was premature because questions of coverage and causation existed. Travelers cites *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382 (Ala. 2007), to support the proposition that appraisal is appropriate only to determine the amount of a loss and not to determine questions of coverage and causation. This is a correct statement of the law, but Travelers's reliance on *Rogers* is misplaced. In *Rogers*, the Alabama Supreme Court held that an appraiser may not resolve disputes concerning the cause of a loss and whether that loss was covered under the policy. In that case, the appraiser could not determine whether the insured's home was damaged by a tornado, which was a covered loss under the policy, or by ground settlement, which was not a covered loss under the policy.

Here, the parties do not dispute what caused the loss—fire caused the loss. The only question here is the extent of the loss. As the *Rogers* court noted, questions about the extent of loss fit squarely within insurance appraisal provisions. *Rogers*, 984 So. 2d at 391. Travelers may not conflate causation or coverage disputes with loss disputes as grounds to delay the submission of a claim to appraisal. *See Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 1325 (N.D. Ala.

2018) ("[F]ailing to distinguish between causation and value disputes would permit parties to 'approach every disagreement on extent of damage as a causation, coverage[,] or liability issue' so that 'either party could defeat the other party's request by labeling a disagreement as a coverage dispute.") (quoting *Rogers*, 984 So. 2d at 391) (brackets in *Cole*).

e.  Conclusion

Having properly entered the appraisal process, Travelers had a contractual obligation to complete the process.  Because the Court finds as a matter of law that Cobblestone did not fraudulently conceal material information from Travelers once the appraisal process was underway, Travelers has not demonstrated as a matter of law that its performance under the appraisal provision was excused.

## 2.  The Roof Claim

Travelers repeats many of its arguments made with respect to the fire claim. Travelers argues that Cobblestone failed to satisfy the policy's conditions precedent to coverage by not complying with requests for additional information, opting instead to file a lawsuit.  Travelers also argues that appraisal on the roof claim was premature and/or inappropriate because questions of coverage and causation existed and because Cobblestone failed to appoint an impartial appraiser as required by the policy's appraisal provision.

Cobblestone, on the other hand, argues that Travelers's decision to inspect only a limited number of roofs, based on the reasoning that 22 of the roofs were replaced in 2009, evidences Travelers's breach of contract and failure to act in good faith. Cobblestone also argues that its demand for appraisal was entirely legitimate based on the parties' dispute concerning the extent of loss to the roofs, and that no coverage or causation questions existed because hail and/or wind is a covered loss under the policy. Finally, Cobblestone argues that it had no choice but to file suit because Travelers was stalling on the roof claim and refused to submit the claim to appraisal.

Neither party is entitled to summary judgment on the breach of contract claim as it relates to the roof loss. Travelers argues that "it did not find any damage on any of the roofs that had been replaced in the 2009 claim." (Doc. 49, p. 9). That is expected because Travelers did not inspect the entire property that was the subject of the roof claim when it had the opportunity to do so. Travelers's adjuster, Brenton Von Kanel, testified that he did not inspect all of the roofs as part of the 2015 claim based primarily on the fact that 22 of the roofs in the complex were replaced in 2009 following a separate storm damage claim:

> So what we did, we took – we knew again, which roofs were replaced, you know, five or six years ago in the prior claim. And we knew which roofs weren't [replaced]. So I knew that we were going to access – well, let me back up.

I guess my initial thought was we'll look at all the roofs in that one day. As we went on throughout the day, due to the heat and that kind of thing, we accessed all the roofs that we knew were older and that were not replaced in that prior claim. And then based on, again, the – what we had seen, you know, from that wind event and how the newer roofs were undamaged, we made the decision to not inspect the remaining because, like I said, it didn't appear that they would have been damaged, based on the event we were there to inspect.

(Doc. 50-8, p. 7, tr. pp. 20-21).

Mr. Von Kanel's notes concerning Cobbletone's 2015 roof claim reveal that his inspection largely was driven by the earlier 2009 claim. Mr. Von Kanel's notes contain 26 entries, identified as A – Z (presumably to reflect 26 buildings on the Cobblestone property), and for each of the roofs replaced in 2009, his notes state simply, "replaced roof, no damage found." (See Doc. 46-11, pp. 25-26). Viewing the evidence in the light most favorable to Cobblestone, for purposes of summary judgment, the Court does not credit the "no damage found" statement in light of Mr. Von Kanel's testimony that he did not inspect all of the 26 roofs in the complex. Cobblestone's 2015 roof claim was made with respect to all of the roofs in the complex, not just the older roofs that were not replaced in 2009.

The fact that Travelers elected to conduct only a partial evaluation of the loss undermines Travelers's remaining arguments. A reasonable jury could conclude that in relying on a prior claim to estimate current damage, Travelers breached the insurance policy.

Travelers's argument that the roof claim involved questions of coverage and causation is also without merit. Travelers does not dispute that wind/hail damage is a covered loss under the policy or that wind and/or hail caused damage to at least some of the roofs in the complex. As with the fire claim, the parties dispute the extent of the loss, a dispute which an appraisal would resolve. Travelers argues that it needed to conduct an additional engineering inspection and that Cobblestone did not respond and instead filed a lawsuit. But the record reflects that Cobblestone did attempt to resolve the claim, and Travelers either ignored or refused Cobblestone's demand for appraisal. Viewing the evidence in the light most favorable to Cobblestone in considering Travelers's motion for summary judgment, a reasonable jury could conclude that Travelers breached the contract by failing to submit the roof claim to appraisal.

A jury also could conclude that Cobblestone prematurely demanded appraisal before the parties had time to fully evaluate the claim. Travelers paid the initial estimate of roughly $17,238.55, as well as the adjusted estimate from Superior Roofing in the amount of $121,280.00. Following receipt of the later estimate prepared by The Howarth Group that exceeded $500,000, Travelers requested an opportunity to have an engineer inspect the roofs. Cobblestone declined and opted to file suit. It is conceivable that given that opportunity, Travelers would have adjusted its payment to Cobblestone. Unlike the fire claim

in this case, the parties did not agree on what needed to be done to repair the roofs, the parties had not each established valuations of the total loss, and the parties had not signed a sworn agreement to submit the claim to appraisal. Viewing the facts in the light most favorable to Travelers as the non-moving party on Cobblestone's motion for partial summary judgment, the Court finds that Cobblestone is not entitled to judgment as a matter of law on the breach of contract claim as it relates to the roof loss.

Because genuine issues of material fact exist concerning Cobblestone's breach of contract claim as it relates to the roof loss, neither party is entitled to summary judgment.

### 3. Bad Faith Claim

Travelers moves for summary judgment on Cobblestone's bad faith claim, arguing that no genuine issue of fact exists and that it is entitled to judgment as a matter of law. As evidence of bad faith, Cobblestone points to Travelers's withdrawal from appraisal on the fire claim and refusal to submit to appraisal on the roof claim, and Travelers's insufficient loss payment on both claims. (Doc. 1-1, ¶¶ 16, 19-20). Cobblestone argues that Travelers has not identified a lawful basis or debatable reason for its refusal to act in accordance with the policy's terms with respect to the fire and roof claims.

Under Alabama law, a plaintiff asserting a claim for bad faith failure to investigate or pay an insurance claim must prove:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

Travelers is entitled to summary judgment on Cobblestone's bad faith claim as it relates to the roof loss because Cobblestone has not established Travelers's breach of contract with respect to that loss as a matter of law. *See Nilsen*, 745 So. 2d 264, 269 (Ala. 1998) (insured cannot sustain bad faith claim in the absence of a breach of contract); *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001) ("[A] breach of an insurance contract is an element of a bad-faith-refusal-to-pay claim.").

With respect to the fire loss, the Court has determined a contract existed between the parties and that Travelers breached the contract by withdrawing from appraisal. Thus, Cobblestone has satisfied the first element of its prima facie case. Genuine issues of material fact exist with respect to the remaining elements of Cobblestone's bad faith claim. With regard to the second element (i.e. whether Travelers intentionally denied the claim), Travelers argues that it did pay at least some amount on the fire claim, and therefore, it did not deny the claim. At the same time, Travelers argues that it did not pay any additional amount (*vis-a-vis* the appraisal process) because Cobblestone did not satisfy its post-loss obligations. These statements are incompatible. If Cobblestone did not meet its conditions precedent to coverage, then it is unclear why Travelers paid any amount on the claim. Travelers cannot have it both ways. Confronting a similar argument by the insurer in *Cole, supra,* Chief Judge Bowdre noted:

> Owners [the insurer] appears to take inconsistent positions on whether it actually denied the Coles' claims. Owners seems to say that, because of the Coles' failure to meet the conditions precedent in the Policy, it could have denied coverage. But Owners also asserts that, despite its alleged non-obligation to provide coverage to the Coles, it did not exert its right to deny the claim. Essentially, Owners contends that it could have left the Coles' claims open indefinitely, acting on the claims or not acting on the claims at its leisure.

326 F. Supp. 3d at 1330, n. 4.

Here, Travelers acted in the same manner by providing a partial payment but choosing to not pay an additional amount based on its insistence that Cobblestone

did not satisfy its post-loss obligations. Travelers's decision to not satisfy the claim or to move a resolution forward via appraisal amounted to a denial of the claim. The Alabama Supreme Court has recognized that a delay in payment may constitute a denial of a claim even though the insurer has agreed to pay some amount toward the claim. *See Livingston v. Auto Owners Ins. Co.*, 582 So. 2d 1038, 1041-42 (Ala. 1991) (finding that insurer's "investigative tactics" and delay in paying the claim "amounted to a denial of the claim").

Factual questions also exist concerning whether Travelers had a legitimate or arguable reason to deny additional payments on the fire claim, and whether Travelers had actual knowledge of a legitimate or arguable reason to fail to pay additional amounts on the claim or to refuse to submit the claim to appraisal. A reasonable jury could infer based on the facts and circumstances of this case that Travelers "engaged in a pattern of behavior to delay paying the claim and avoid making a good faith investigation of it, including submitting [the claim] to appraisal, a process that would have resulted in a final determination on the value of the claim." *Cole*, 326 F. Supp. at 1330. Because genuine issues of material fact exist with respect to Cobblestone's bad faith claim as it relates to the fire loss, the Court will deny Travelers's motion for summary judgment on this claim.

## II.   CONCLUSION

In summary, the Court:

(1) denies Travelers's motion for summary judgment on Cobblestone's breach of contract claim with respect to the fire and roof losses.

(2) denies Travelers's motion for summary judgment on Cobblestone's bad faith claim as it relates to the fire loss and grants the motion as it relates to the roof loss.

(3) grants Cobblestone's motion for partial summary on its breach of contract claim with respect to the fire loss and denies the motion with respect to the roof loss.

The Court will issue a pre-trial order.

**DONE** and **ORDERED** this March 27, 2019.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE